UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

———————————————

CHARLENE DANCE,

                   Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                   Defendant.

———————————————

1:20-cv-03141-NLH

**OPINION**

**APPEARANCES:**

ALAN H. POLONSKY
POLONSKY AND POLONSKY
512 S. WHITE HORSE PIKE
AUDUBON, NJ 08106

    *On behalf of Plaintiff*

DAVID E. SOMERS, III
SOCIAL SECURITY ADMINISTRATION
300 SPRING GARDEN ST
6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB")[1] under Title II of the Social Security

---

[1] DIB is a program under the Social Security Act to provide
disability benefits when a claimant with a sufficient number of

Act.  42 U.S.C. § 423, et seq.  The issue before the Court is
whether the Administrative Law Judge ("ALJ") erred in finding
that there was "substantial evidence" that Plaintiff was not
disabled at any time since her alleged onset date of disability,
July 17, 2017.  For the reasons stated below, this Court will
affirm that decision.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

On August 5, 2016, Plaintiff, Charlene Dance, protectively
filed an application for DIB,[2] alleging that she became disabled
on July 17, 2017.[3]  Plaintiff claims that she can no longer work
as a manager barber, hairdresser, teacher aide II, or
psychiatric aide/residential care aide because of her
degenerative disc disease and affective disorder, among other
impairments.[4]

---

quarters of insured employment has suffered such a mental or
physical impairment that the claimant cannot perform substantial
gainful employment for at least twelve months.  42 U.S.C. § 423
et seq.

[2] A protective filing date marks the time when a disability
applicant made a written statement of his or her intent to file
for benefits.  That date may be earlier than the date of the
formal application and may provide additional benefits to the
claimant.  See SSA Handbook 1507; SSR 72-8.

[3] Plaintiff's original alleged onset date was March 8, 2016, but
because she worked at the substantial gainful level for two
quarters in 2017, she amended her alleged onset date to July 17,
2017.

[4] On the amended alleged onset date of July 17, 2017, Plaintiff
was 44 years old, which is defined as "a younger individual"

Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested a hearing before an ALJ, which was held on October 2, 2018.  On December 17, 2018, the ALJ issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on February 20, 2020, making the ALJ's decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a

---

(age 18-49).  20 C.F.R. § 404.1563.

reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

4

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

## B.   Standard for DIB

The Social Security Act defines "disability" for purposes

5

of an entitlement to a period of disability and disability
insurance benefits as the inability to engage in any substantial
gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in
death, or which has lasted or can be expected to last for a
continuous period of not less than 12 months.  See 42 U.S.C. §
1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as
disabled only if her physical or mental impairments are of such
severity that she is not only unable to perform her past
relevant work, but cannot, given her age, education, and work
experience, engage in any other type of substantial gainful work
which exists in the national economy, regardless of whether such
work exists in the immediate area in which she lives, or whether
a specific job vacancy exists for her, or whether she would be
hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B)
(emphasis added).

The Commissioner has promulgated regulations[5] for
determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step
process is summarized as follows:

> 1.   If the claimant currently is engaged in substantial
>      gainful employment, she will be found "not disabled."

---

[5] The regulations were amended for various provisions effective
March 27, 2017.  See 82 F.R. 5844.  The parties do not indicate
that any of the amendments are applicable to the issues
presented by Plaintiff's appeal.

2.    If the claimant does not suffer from a "severe
      impairment," she will be found "not disabled."

3.    If the severe impairment meets or equals a listed
      impairment in 20 C.F.R. Part 404, Subpart P, Appendix
      1 and has lasted or is expected to last for a
      continuous period of at least twelve months, the
      claimant will be found "disabled."

4.    If the claimant can still perform work she has done in
      the past ("past relevant work") despite the severe
      impairment, she will be found "not disabled."

5.    Finally, the Commissioner will consider the claimant's
      ability to perform work ("residual functional
      capacity"), age, education, and past work experience
      to determine whether or not she is capable of
      performing other work which exists in the national
      economy.  If she is incapable, she will be found
      "disabled."  If she is capable, she will be found "not
      disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

therefore dependent upon a finding that the claimant is

incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.

See Wallace v. Secretary of Health & Human Servs., 722 F.2d

1150, 1153 (3d Cir. 1983).  In the first four steps of the

analysis, the burden is on the claimant to prove every element

of her claim by a preponderance of the evidence.  See id.  In

the final step, the Commissioner bears the burden of proving

that work is available for the Plaintiff: "Once a claimant has

proved that he is unable to perform his former job, the burden

shifts to the Commissioner to prove that there is some other

7

kind of substantial gainful employment he is able to perform."
Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v.
Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C. Analysis**

At step one, the ALJ found that Plaintiff had not engaged
in substantial gainful activity since the alleged onset of
disability.  At step two, the ALJ found that Plaintiff's
impairments of degenerative disc disease and affective disorder
were severe.  At step three, the ALJ determined that Plaintiff's
severe impairments or her severe impairments in combination with
her other impairments did not equal the severity of one of the
listed impairments for 1.04 - disorders of the spine - or
listing 12.04 - depressive, bipolar and related disorders.  The
ALJ then determined that Plaintiff had the residual functional
capacity ("RFC") to perform sedentary work with certain
restrictions.[6]  After considering a vocational expert's
testimony, the ALJ concluded that Plaintiff was not able to
perform her past relevant work, but Plaintiff's RFC permitted
her to work as a final assembler/electrical, compact assembler,
and rating clerk (steps four and five).

Plaintiff argues that the ALJ erred by not explaining her

---

[6] See 20 C.F.R. § 404.1567 ("Physical exertion requirements. To
determine the physical exertion requirements of work in the
national economy, we classify jobs as sedentary, light, medium,
heavy, and very heavy.").

conclusion that Plaintiff's impairments did not meet Listing 1.04 - disorders of the spine - at step three.  Plaintiff also argues that the ALJ's RFC assessment was not supported by substantial evidence.  Plaintiff further argues that the ALJ erred by relying upon the unsupported RFC assessment to conclude Plaintiff was capable of performing certain jobs, and that the number of jobs in the national economy was not properly supported by the VE.  The Court finds Plaintiff's arguments to be without merit.

**1.  Whether the ALJ erred by not explaining her conclusion that Plaintiff's impairments did not meet any of the listings at step three**

Plaintiff argues that the ALJ erred at step three by finding that her impairments did not meet Listing 1.04 - disorders of the spine.[7]  The ALJ concluded, without specific analysis at step three, that Plaintiff's impairments did not meet Listing 1.04.  Plaintiff argues, "Whether or not Dance suffers from an impairment or impairments that either meets or is equivalent to the requirements of the Listings of Impairments is a question of fact that may be susceptible of different conclusions.  What cannot be contested, however,

---

[7] It does not appear that Plaintiff challenges the ALJ's finding as to Listing 12.04 - depressive, bipolar and related disorders. Even if she did, the Court finds that the ALJ did not commit error for the same reasons the ALJ properly considered whether Plaintiff met Listing 1.04.

is that this analysis never occurred in the decision of the Administrative Law Judge," and it therefore cannot be sustained.

As a general principle, an ALJ is required to set forth the reasons for her decision, and a bare conclusory statement that an impairment does not match, or is not equivalent to, a listed impairment is insufficient.  Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119-20 (3d Cir. 2000).  An ALJ is not required, however, "to use particular language or adhere to a particular format in conducting [her] analysis.  Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  Jones v. Barnhart, 364 F.3d 501, 504-05 (3d Cir. 2004).  An ALJ's step three analysis is proper when the "decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that" a claimant does not meet the requirements for any listing.  Id.

To meet Listing 1.04, Plaintiff must have:

A disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back,

10

positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

In order for an impairment to match a listing, a claimant must show that the impairment meets "'*all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" Jones, 364 F.3d at 504 (quoting Sullivan v. Zebley*,* 493 U.S. 521, 530 (1990) (emphasis in original)).  The burden is on Plaintiff to demonstrate that her impairments meet the listings. Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005) (explaining that in "the first four steps the burden is on the claimant"); id. ("If the claimant satisfies step 3, she is considered per se disabled.").

The quoted Zebley decision further explains:

"The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult,

> regardless of his age, education, or work experience,
> from performing any gainful activity, not just
> 'substantial gainful activity.'  The reason for this
> difference between the listings' level of severity and
> the statutory standard is that, for adults, the listings
> were designed to operate as a presumption of disability
> that makes further inquiry unnecessary.  That is, if an
> adult is not actually working and his impairment matches
> or is equivalent to a listed impairment, he is presumed
> unable to work and is awarded benefits without a
> determination whether he actually can perform his own
> prior work or other work."

Zebley, 493 U.S. at 532 (citations omitted).

Plaintiff recites various medical records that purportedly meet all the elements of the Listing 1.04, but Plaintiff fails to match that evidence with the necessary elements of Listing 1.04.  It is Plaintiff's burden to do so.  Without any articulation of how Plaintiff's impairments meet all the elements of Listing 1.04, the Court cannot find that the ALJ erred on her determination that Plaintiff did not meet those elements.[8]  Consequently, the ALJ did not err at step three.

**2.   Whether the ALJ erred in Plaintiff's RFC assessment**

The ALJ found that Plaintiff had the RFC to perform

---

[8] Moreover, Plaintiff's argument is also without merit because of this Court's finding, discussed below, that the ALJ's RFC determination was proper.  "Logic dictates that where it has been found at the statutory standard level of severity that a claimant retains the RFC to perform his past relevant work, it cannot be found that the claimant's impairment meets a higher level of severity which affords the claimant the presumption of disability."  Harris v. Commissioner of Social Security, 2020 WL 2214534, at *7-8 (D.N.J. 2020); Sasse v. Commissioner of Social Security, 2019 WL 1233553, at *6 (D.N.J. 2019) (same).

sedentary work with various restrictions.  Plaintiff mainly
contends that the ALJ's decision fails to take into account
Plaintiff's testimony as to the severe pain she experienced both
before and after her cervical fusion, as well as pain from
fibromyalgia.  Plaintiff argues that even though the ALJ stated
that she considered Plaintiff's testimony regarding her pain and
the limitations it imposes on her, it is a "mystery" as to how
the ALJ did that.

The Court does not agree.  The ALJ summarized Plaintiff's
reports of pain (R. at 23) and then detailed the medical,
opinion, and other record evidence (R. at 23-26).  The ALJ noted
that on August 16, 2017, Plaintiff underwent anterior cervical
discectomy and fusion surgery at C6-C7, and at a September 26,
2017 follow-up visit with her orthopedic surgeon, James
Sanfilippo, M.D., Plaintiff reported having no neck pain or pain
down her arms, the numbness and tingling in her hands was
improving, and even though she reported feeling tired and having
back pain, she noted that the strong neck pain she used to have
was now gone.  On examination, it was found that Plaintiff had
full range of motion of the cervical spine and full strength in
both upper extremities.  In an October 3, 2017 follow-up visit,
Plaintiff reported neck pain and weakness but had full strength,
intact sensation and excellent range of motion in all
directions.  (R. at 23.)

During an October 17, 2017 visit with neurologist Arun Kachroo, M.D., Plaintiff reported memory loss, concentration problems, migraines and hand paresthesias, but she reported improvement in her radicular pain since surgery.  On examination, Dr. Kachroo found that Plaintiff had normal cranial nerves, normal coordination, a normal gait, full strength in the upper and lower extremities, normal sensation in all extremities and normal reflexes.  Plaintiff also scored a twenty-nine out of thirty on a mini-mental state examination. (R. at 23-24.)

Over the course of the next few months, Plaintiff reported similar problems to Dr. Kachroo, rheumatologist James P. Dwyer, D.O., her physical therapist, and a physician's assistant, but physical examinations were mainly unremarkable, and Plaintiff had a full cervical spine range of motion and full strength in both upper extremities.  These findings were observed through September 28, 2018.  (Id.)  Additionally, in November 2017, Plaintiff reported that she was able to travel to Disney.  (R. at 24.)

The ALJ next assessed the opinion evidence, including the opinions of six state consultative examiners, and the ALJ explained the weight she afforded those opinions.[9]  (R. at 25-

---

[9] See Rafine v. Commissioner of Social Security, 2020 WL 3073829, at *5 (D.N.J. 2020) (citing 20 C.F.R. § 404.1527(c)) (explaining that an ALJ is required to state what weight he or she ascribes to a medical opinion, but not to other forms of medical

14

26.)  The ALJ also considered the testimony of Plaintiff's husband.  (R. at 26.)  Based on all of the foregoing evidence and assessment of the opinion evidence, the ALJ concluded that even though Plaintiff's "medically determinable impairments could have reasonably been expected to cause the alleged symptoms," "the statements concerning the intensity, persistence, and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (R. at 23.)  Accordingly, the ALJ determined that Plaintiff retained the RFC to perform sedentary work.  (R. at 22.)

Plaintiff presents one general and three specific challenges to the ALJ's RFC determination.  First, Plaintiff generally contests the ALJ's RFC determination as a whole and disagrees with the ALJ's assessment of the medical evidence. Plaintiff posits, "What is it exactly that the Administrative Law Judge sees in those reports that causes her to believe that the pain and limitations testified to by Dance were other than as alleged?," because as of the time of the hearing it was just over a year from Plaintiff's second fusion, and there is evidence of ongoing pain and marked limitations of motion even as of June 2018.  This general disagreement with the ALJ's

---

evidence).

assessment does not pinpoint what the ALJ failed to consider, however.  Plaintiff's argument only relates that Plaintiff views the evidence in a different way, which is insufficient to establish that the ALJ's decision is not supported by substantial evidence.  See, e.g., Perkins v. Barnhart, 79 F. App'x 512, 514-15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); Moody v. Commissioner of Social Security Administration, 2016 WL 7424117, at *8 (D.N.J. 2016) ("[M]ere disagreement with the weight the ALJ placed on the opinion is not enough for remand."); Grille v. Colvin, 2016 WL 6246775, at *8 (D.N.J. 2016) ("Distilled to its essence, Plaintiff's argument here amounts to nothing more than a mere disagreement with the ALJ's ultimate decision, which is insufficient to overturn that decision.").

Plaintiff also presents two specific challenges to the ALJ's assessment of two consultative examiners' opinions.  One is with regard to the June 13, 2018 consultative examination by Juan Carlos Cornejo, D.O.  The ALJ detailed Dr. Cornejo's findings and opinion, and gave "significant weight to Dr. Cornejo's opinion because it is generally supported by his examination findings and generally consistent with the medical evidence of record discussed above."  The ALJ gave "less weight to his conclusions regarding the claimant's use of her hands

16

given his own examination findings of full pinch and grip strength and no significant sensory deficits in the upper extremities."  (R. at 25.)

Plaintiff relates that the ALJ properly recounted that Dr. Cornejo found Plaintiff could sit for six hours in an eight hour day but that she could only do so for one hour at a time. Plaintiff relates that the ALJ failed to include, however, Dr. Cornejo's limitation that she could stand and walk for one hour total in an eight hour day, and for no more than 30 minutes at a time.  Accepting that the ALJ failed to explicitly recite this sit/stand limitation in the decision,[10] Plaintiff does not articulate how this missing limitation from the analysis impacts the ALJ's RFC determination, see SSR 96-9p, or how the other evidence in the record supports that limitation.

Plaintiff also asks, "[W]hy does the Administrative Law Judge agree with some of the conclusions, but not the manipulative restrictions? She says because this is inconsistent with what she sees in Dr. Cornejo's report as to pinch and grip strength being normal and the lack of sensory deficits in the arms.  But, this is not the only findings of Dr. Cornejo which included the lack of full motion of the neck and tenderness

---

[10] See Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record."), cited *supra* page 5.

along all joints of the hands."  Again, Plaintiff fails to explain what other findings not mentioned by the ALJ contradict the ALJ's RFC determination.  The Court therefore finds that the ALJ did not err in consideration of Dr. Cornejo's opinion.

Plaintiff's second specific challenge to the ALJ's assessment of a consultative examiner's opinion is to the ALJ's consideration of the June 20, 2018 evaluation by consultative examiner Wm. Dennis Coffey, Psy.D.  As related by the ALJ, Dr. Coffey found that Plaintiff had moderate limitations in her ability to understand, remember and carry out simple instructions and make judgments on simple work-related decisions.  Plaintiff argues that even though the ALJ afforded Dr. Coffey's opinion "significant weight," the ALJ failed to account for Plaintiff's limitations in those areas in the RFC.

The ALJ did not fail in this regard.  In the statement of Plaintiff's RFC, the ALJ determined that Plaintiff was "limited to simple work instructions and simple work decisions consistent with unskilled work in a routine environment with few if any changes."  (R. at 22.)  This finding directly aligns with Dr. Coffey's opinion.  See, e.g., Torres v. Commissioner of Social Security, 2018 WL 1251630, at *6–7 (D.N.J. 2018) (finding that the ALJ's inclusion in the plaintiff's RFC of "simple, routine and repetitive tasks involving only simple, work related decisions" squarely addressed the plaintiff's moderate

18

limitations in concentration, persistence, and pace) (citing
Najmi-Nejad v. Barnhart, 75 F. App'x 60, 64 (3d Cir. 2003)
(citing Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002)
(noting that the phrase "simple, routine, repetitive work" would
account for "deficiencies in concentration, persistence [and]
pace")); Russo v. Astrue, 421 F. App'x 184, 192 (3d Cir. 2011)
(same).  Thus, the Court finds that the ALJ properly considered
Dr. Coffey's opinion.

Finally, Plaintiff contends that the ALJ erred in her RFC
determination because at step three the ALJ determined that
Plaintiff experienced moderate limitations in concentrating,
persisting, or maintaining pace, but she makes no further
mention of Plaintiff's mental limitations in the RFC.  As
discussed above, however, the step three analysis is different
from the RFC analysis.  See Torres v. Commissioner of Social
Security, 2018 WL 1251630, at *6-7 (D.N.J. 2018) (citing SSR 96-
8p).  Additionally, the RFC accounted for those limitations with
the finding that Plaintiff was capable of performing simple,
unskilled work.  The Court further notes that as reported by Dr.
Coffey, "The claimant denied having any history of mental health
treatment."  (R. at 25.)

Overall, the ALJ properly assessed Plaintiff's subjective
complaints and the medical and opinion evidence to formulate
Plaintiff's RFC.  See Zirnsak v. Colvin, 777 F.3d 607, 612 (3d

Cir. 2014) ("[T]his Court defers to the ALJ's assessment of credibility."); Metz v. Federal Mine Safety and Health Review Com'n, 532 F. App'x 309, 312 (3d Cir. 2013) ("Overturning an ALJ's credibility determination is an 'extraordinary step,' as credibility determinations are entitled to a great deal of deference."); 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . .");[11] Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir. 1999) ("[A]n ALJ is permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence."),

---

[11] Effective March 26, 2016, the SSA issued Social Security Ruling 16-3p, which superseded SSR 96-7p, to eliminate the use of the term "credibility." SSR 16-3p explains, "We solicited a study and recommendations from the Administrative Conference of the United States (ACUS) on the topic of symptom evaluation. Based on ACUS's recommendations and our adjudicative experience, we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.... In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." SSR 16-3p; see also Levyash v. Colvin, 2018 WL 1559769, at *8 (D.N.J. 2018) (explaining that SSR 16-3P announced a policy against evaluating claimant's truthfulness in determining whether individuals are disabled, but even though SSR 16-3p clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same).

cited by Brownawell v. Commissioner, 554 F.3d 352, 355 (3d Cir.
2008)); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("We
are also cognizant that when the medical testimony or
conclusions are conflicting, the ALJ is not only entitled but
required to choose between them.... [W]e need from the ALJ not
only an expression of the evidence s/he considered which
supports the result, but also some indication of the evidence
which was rejected.").

### 3.    Whether the ALJ erred at step five

After consultation with a vocational expert at the hearing,
the ALJ concluded that Plaintiff was not able to perform her
past relevant work, but Plaintiff's RFC permitted her to work as
a final assembler/electrical, compact assembler, and rating
clerk, as the VE testified that these jobs matched Plaintiff's
RFC and existed in significant numbers in the national economy.

Plaintiff challenges this step five determination in three
ways.  First, Plaintiff argues that the step five determination
was based on an improper RFC.  Because the Court has found that
the ALJ's RFC determination is supported by substantial
evidence, that argument is unavailing.

Second, Plaintiff argues that the data used by the VE to
support the number of jobs in the national economy is faulty and
unreliable.  This Court has extensively addressed - and rejected
- this same argument at least four times before.  See Morris v.

21

Commissioner of Social Security, 2020 WL 2764803, at *8 (D.N.J. 2020)(declining to reform the methodology that an otherwise qualified SSA VE uses to determine available and appropriate jobs in the national economy that match a claimant's RFC); Mariani v. Commissioner of Social Security, 2019 WL 5418092, at *6 (D.N.J. 2019)(same); Benton v. Commissioner of Social Security, 2019 WL 2285490, at *7 (D.N.J. 2019)(same); Jean-Pierre v. Commissioner of Social Security, 2017 WL 4316880, at *9 (D.N.J. 2017)(same).  The Court adopts and incorporates the analysis in those decisions here.

Finally, Plaintiff argues that the ALJ erred by finding Plaintiff to be capable of performing two of the jobs - compact assembler and rating clerk - because the DOT lists these jobs as having a reasoning level of 2, which is a higher level than the RFC's requirement that Plaintiff be limited to jobs with only simple instructions and tasks.[12]  This Court has also addressed -

---

[12] "The DOT is a vocational dictionary that lists and defines all jobs available in the national economy and specifies what qualifications are needed to perform each job."  Zirnsak v. Colvin, 777 F.3d 607, 617 (3d Cir. 2014) (citing Appendix C, Dictionary of Occupational Titles, available at www.occupationalinfo. org/appendxc_1.html) (other citations omitted).  The qualification categories listed by the DOT for each job include the job's Strength level, General Educational Development ("GED") level, and its Specific Vocational Preparation ("SVP") level.  Strength level "reflects the estimated overall strength requirement of the job."  GED measures the "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance."  GED is broken into three categories: (1)

and rejected - this argument before.  See Rafine v. Commissioner
of Social Security, 2020 WL 3073829, at *8 (D.N.J. 2020) ("Short
of the ALJ repeating the exact phrase used by the DOT in its
definition of GED level L2, something which the ALJ is not
required to do, Plaintiff offers no other way the ALJ could have
articulated the 'simple, routine tasks' limitation differently
so that the limitation would align with a GED level L2 job.");
Jean-Pierre v. Commissioner of Social Security, 2017 WL 4316880,
at *7 (D.N.J. 2017) (citing Zirnsak, 777 F.3d at 618) ("[T]here
is no bright-line rule stating whether there is a per se
conflict between a job that requires level 3 reasoning and a
finding that a claimant should be limited to simple and routine
work."); 20 C.F.R. § 416.968(a) ("Unskilled work is work which
needs little or no judgment to do simple duties that can be
learned on the job in a short period of time."); see also Money
v. Barnhart, 91 F. App'x 210, 215 (3d Cir. 2004) ("Money makes
the assumption that even a reasoning level of 2, where 1 is the
lowest possible level of reasoning, is incompatible with the
ALJ's decision in her RFC that her jobs must be simple.  However
even level two only requires a person to '[a]pply commonsense
understanding to carry out detailed but uninvolved written or

---

reasoning development, (2) mathematical development, and (3)
language development. Reasoning levels in the DOT range from
level 1 to level 6.

oral instructions[; d]eal with problems involving a few concrete variables in or from standardized situations.'  Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive.")).

Additionally, at the end of the five-step analysis, an ALJ need only establish that a claimant is capable of performing one job that exists in significant numbers in the national economy. Thus, even if the compact assembler and rating clerk positions were not appropriate for Plaintiff, substantial evidence still supports the ALJ's finding that Plaintiff was capable of performing the final assembler job.  See Sasse v. Commissioner of Social Security, 2019 WL 1233553, at *8 (D.N.J. 2019) (citing Reed v. Commissioner of Social Security, 2018 WL 5617549, at *6 (D.N.J. 2018) (citing Nalej v. Berryhill, 2017 WL 6493144, at *11 (D.N.J. 2017) (citing 20 C.F.R. § 16.966(b))(explaining that SSA regulations provide that work exists in the national economy when there is a significant number of jobs in one or more occupations that an individual can perform, and holding that even if the ALJ erred in finding the plaintiff capable of performing two of three jobs, he did not err as to the third job, and that finding as to only one job was sufficient to support his determination that the plaintiff was not disabled)).

Consequently, the Court finds that the ALJ did not err at step five.

24

### III. Conclusion

This Court may not second guess the ALJ's conclusions, and may only determine whether substantial evidence supports the ALJ's determinations.  Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)) (explaining that the pinnacle legal principal is that a district court is not empowered to weigh the evidence or substitute its conclusions for those of the ALJ). For the foregoing reasons, the ALJ's determination that Plaintiff was not totally disabled as of July 17, 2017 is supported by substantial evidence.  The decision of the ALJ will therefore be affirmed.

An accompanying Order will be issued.


Date:  July 26, 2021                    s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

25